Case number 17-5207, Bassem Al-Tamimi et al. Appellants v. Sheldon Adelson et al. Mr. McMahon for the Appellants, Mr. Pullham for Appellees USA et al. Mr. Blackman for Appellees Adelson et al. Mr. Blackman for Appellees Adelson et al.  Good morning, Members of the panel. May it please the Court, I'm Martin McMahon. I haven't been up here in a while, so forgive me if I violate some appellate advocacy protocols. I have a good friend and mentor, Jake Stein, and I sought his advice on how to approach this appeal, or oral argument, anyway. And he said, basically, don't repeat the arguments in the briefs. Make a couple of points, and then open it up for discourse and discussion on some vital issues, like a touching concern test or a political question document. So if there's one point I can leave you with, before we go off on discussions, is that there are policies that these defendants have financed, encouraged, promoted in the occupied territories. These policies are anathema to core American values. Number one, these folks don't like paying income taxes. And I regret that, because yesterday I sent a substantial check to the IRS. These donors take tax write-offs for purchasing military hardware. And the 501c3s every year file fraudulent 990s. That's their annual return. They tell their donors that all the money Again, this is not a criminal prosecution. Can you give us, as specifically as you can, your statement of the claim that you're asserting that you believe does not raise a non-justiciable political question? Yes, Your Honor. Conduct begins on U.S. soil. These individuals raise funds, their purpose is What's the legal claim that you're referring to? I'm sorry? The legal claim that you are referring to. Well, under ATS, financing extradition of killings, financing ethnic cleansing, financing genocide, war crimes. And they raise money. They send that funds overseas. They violate the Money Laundering Act, both America and Israel. And they finance violence in the occupied territories. And the monies are used to maim and murder Palestinian civilians. And some of the claims in this case, Your Honor, concern extrajudicial killings that these defendants have financed. And your allegations of intent and or knowledge that the funds are going to that end, the most specific allegations that you have are where in your complaint? Well, in the proceedings below, we prepared a memorandum in opposition. If you look at page 7, Israeli Ambassador Mark Ginsberg. I'm talking about in the complaint, a paragraph in the complaint. Because, as I understand it, this case is at the pleadings. Well, Your Honor, we alleged throughout the complaint that the funds were sent overseas to accomplish these criminal acts. There's also a section in the complaint that details why these defendants were on knowledge. Haaretz, the New York Times of Israel, started publishing articles in 1990 about this. And there are other references to four government reports from the Israeli government, official reports, about the theft of property, about maiming and murdering Palestinians. I have the Spiegel data research report here published by Israel. Forged deeds and number of settlements. Also, there's a reference to firing ranges established on these settlements. Firing ranges and sniper schools are routine expenditures for these settlements. Where does the money come from? Right here on U.S. soil. And that should satisfy the touching concern test, although I don't think the court really addressed that issue. Does that answer your question, Your Honor? Not very specifically. You argue that your claim does not require any determination or rely on a determination of the legality or not of the settlements. Is that because you believe the determination has already been made that they are unlawful and you're relying on that? Or because you think even if it were the case that they were lawful, your claim nonetheless is viable? Yes, Your Honor. You probably read the complaint. In the complaint, I forget which page it is, but we laid out five pages showing that for 40, 45 years or so, ten American presidents, eight secretaries of state have declared them to be illegal, and they are the main reason why there isn't peace in the OPT. But whether or not the settlements are legal or not, because we said in our complaint,  Let me ask you this, Your Honor. Extrajudicial killings, the lead plaintiff claims his brother-in-law and his sister were murdered, literally by Israeli settlers living next door to his home. Now, what do extrajudicial killings, he owns a home and a property, by the way, what do extrajudicial killings have to do with the legality of settlements? Murder and genocide and ethnic cleansing have nothing to do with who owns a particular piece of dirt in the occupied territories. What is your cause of action under the Torture Victim Protection Act? Well, we have American citizens, Your Honor, I think there are at least three, perhaps four. Their property worth a couple of million dollars has been literally stolen by the settlers. And the Spiegel data report, which we reference in the complaint, references how it's done, forge deeds. The folks in America send over money to pay professional forgers to come up with deeds, the Palestinian property, which are complete forgeries. So that's how the properties are illegally taken. Your TVPA claim is against American defendants? Your TVPA claim is against American defendants? Yes, Your Honor. Under our circuit precedent, the TVPA suits don't run against private U.S. actors? Well, I wasn't aware of that, Your Honor. We have complained that the American citizens who are plaintiffs, who have lost property, can focus on terrorism practice that are received by these entities. International terrorism, defined under 182939C, means you're promoting violence overseas and you're trying to intimidate a civilian population. So that's our theory under that statute, Your Honor. They're promoting international terrorism. But I was not aware of that case, if you have that for me. Would you agree that count four, which is the trespass, makes it necessary for us to decide who owns the property? Well, Your Honor, there's two views on that. Every one of our plaintiffs under cause of action four have deeds. Most of them are in Hebrew. We decided through our due diligence that we couldn't file a trespass claim in good faith unless they had deeds. But again, a court can decide, I think, with expert opinions from our side, but with deeds that Mr. Smith does indeed own that property and no longer owns the property because it's now a military barracks or it's now a Jewish-only highway or a Jewish-only school. So I think a competent trial judge can, in the pretrial conference, whittle claims down perhaps and say, I'm not going to allow those. It's not enough proof, but I'll allow four plaintiffs to testify that their property, that they owned it, was basically trespassed upon and converted by these defendants. I'll allow that to go forward. I don't think we're at that stage yet, Your Honor. So a claim of murder or a claim of fraudulent taking of property is not alone enough to bring a case under the Alien Tort Statute. Your allegations are that these actions were done with an effort to obliterate a people. They were done on the basis of nationality or religion or ethnicity or all of the above, and that's what makes them in violation of the ATS. Extrajudicial killings, Your Honor. Ethnic cleansing. Well, extrajudicial killings, a wrongful death is an extrajudicial killing. It doesn't necessarily rise to the level of a violation of the law of nations, a core human rights violation actionable under the Alien Tort Statute. So I'm asking you to help us by explaining why individual conduct, individual actions that you've alleged, what is it that brings them from what under American law would be a state law property claim or a state law wrongful death claim into the Alien Tort Statute. Well, Your Honor, in Sprinkle throughout our lawsuit are all the newspaper reports, whether in Israel or here, or the government reports that confirm what has been going on in the OPT, including extrajudicial killings. So the folks here in America collecting money for alleged transmission of funds to Israel proper, which is a complete lie and misrepresentation, they go to the OPT to fund settlements. So then those folks knowingly send money overseas, and they travel to the, at your expense by the way, they travel to the OPT, and they see there are no Palestinians left anymore. Gee, I wonder why that occurred. So I think, Your Honor, these folks had the intention to rid the West Bank of all non-Jews. They've done a very good job. 400,000 Palestinians no longer live in the OPT. 49,000 homes have been confiscated. Your decision in Simon v. Republic of Hungary says confiscation of homes, systematic confiscation of homes, is genocide. So I think there are valid claims that we advance under the ATS, which are war crimes, which violate the law of nations and our Constitution. There are circumstances and have been over the several decades covered by your complaint in which Israelis could lawfully obtain permission to settle in various places in the West Bank, and there are also situations in which they are alleged to have done so unlawfully. So the fact that there are some, that somebody could arrive in an area and say there are no Palestinians here, how does that person, how have you alleged that person is supposed to know that the existence of Israeli Jews rather than Palestinians in a particular place is the result of war crimes, crimes against humanity, genocide, and the like? That's the basis on which you're asserting that there's knowledge. Is somebody going there and saying where are the Palestinians? Yes, Your Honor. I'd like to answer that in more depth, but I realize I'm jerking. You can take time to answer. I'm sorry? You may take the time to answer. Thank you, Your Honor. I believe that when, I mean, let's face it, not all Jewish settlers are terrorists, okay? Not all Jewish settlers have stolen Palestinian property. We don't allege that in the lawsuit, but there's a group of violent, belligerent settlers that take target practice every morning and kill Palestinians. That's our complaint for lead plaintiff Ali Al-Tanini. He lost a brother and a sister-in-law because these folks take target practice. Now, in terms of your question, if they come upon a piece of property, there's an American plaintiff, Linda Katib. She has six parcels of property. Well, she hires a lawyer over there, which is detailed in the lawsuit, and he comes back and says you don't own those anymore. Why? Because Palestinian, I mean, Jewish settlers have taken them over. So I don't know. I'm not complaining about all Jewish settlers, and I'm not saying that we require a determination that settlements are legal or not. We do not. We require that those folks who are promoting violence here in America, collecting $2 billion a year in an annual money laundering scheme, and that's being sent overseas to promote violence, which violates Mr. President Clinton's executive order and President Bush's executive order. They know what they're doing, Your Honor. They visit the settlements every year at your taxpayer expense, and they see there are no more Palestinians here. Hooray. Thank you. So I do have my three-minute rebuttal time. You have one minute left. We'll give you some more time. Thank you. Mr. Pullen. Thank you. Good morning. Good morning. May it please the Court. Thomas Pullen for the United States of America and Elliot Abrams. The appellants in this case have forfeited any claim on appeal that the district court earned in its application of the political question doctrine. Despite this court's instruction in its April 12th order that all issues and arguments must be raised by appellants in the opening brief, the appellants did not present any argument that the district court misapplied the political question doctrine. Instead, the appellants simply stated that they previously discussed the issue elsewhere and saw no reason to brief it further. By deliberately choosing not to brief the issue, the appellants have forfeited it, and this court can resolve the issue on that basis alone. In the event that the court decides to overlook the forfeiture, the district court's judgment was correct. Let me ask you this. My concern is why do you think the political question doctrine is in play? They are making straight statutory claims. Whether you agree with them or not, whether there's a cause of action, it's a different question. And we have said, the Supreme Court has made it clear in Zivotofsky, which wound its way up. They made it very clear. Statutory or constitutional claim, that's what courts do. And the district court's concerns, under the umbrella of political question, have nothing to do with the resolution of the statutory claims. Statutory claims can be addressed, right or wrong, there is or is not a cause of action. And we have a lot of opinions in this court in recent years, Perrini, Rawls, others as well, with Zivotofsky being the principal point. We don't go to the political question doctrine as an expedient to avoid statutory questions that may seem messy. We decide them. That's what we're here for. Well, I think just the fact that there is a statute involved does not, as this court said in Al-Shifa, override the Article 3. Does Al-Shifa somehow overturn Zivotofsky? No, but I think... Well, then let's talk about Zivotofsky, Perrini, Rawls, other such cases. Certainly, I mean, Zivotofsky involved... Military targeting. That's a lot different from what we're talking about here. I'm sorry, Al-Shifa did. Yeah. Yes. But when the court looks at whether there's a political question, as Baker instructs and Zivotofsky carries that analysis forward, the court looks at the questions presented in terms of the history of the management by the political branches. It looks at the... No, no, that's really backwards. I thought what Zivotofsky was trying to straighten our heads on that. If there's a statutory claim, it isn't whether it's right or wrong. If the party coming in says, I'm resting my claim on here are the statutes that I think are in play, the court then considers whether there's a cause of action. That's the first thing. And then if there is, we proceed to decide the statutory claim. We don't say, oh, well, you know, this is kind of a messy political thing, and so, you know, maybe someone in the executive branch will be agitated or Congress might be agitated. If there is a statute that is claimed to be in play, it's our job to decide the alleged cause of action under that statute. I don't think Zivotofsky is... You can always find... Let me make my point this way. You can always find political messy situations in cases of this sort, and that's not a reason to run for the political question doctrine. You decide it under the statute. And it's a pretty straightforward exercise here under ATS and under the torture victim statute. There are a lot of claims, and that may make it seem hard, but it's really pretty straightforward. ATS, they're resting on a couple of things where the claim is going to be very hard, but it's very straightforward how to work your way through it. They either have it or they don't. Well, I think the political question doctrine here is implicated in a few different ways. One, adjudicating the rights and liabilities of the Palestinian and Israeli people with respect to settlements thrusts the judiciary into a foreign relations matter that the executive has been trying to actively resolve for years and does so in a manner that would constrain that policy discussion. You know, the other way to look at it is, sir, ma'am, what's your claim under ATS? Genocide. The stuff you're talking about is all irrelevant. Genocide. Okay, let's assume that that violates the law of nation. Now, what's your claim with respect to that? Do you have enough to stay in court? Are you stating a cause of action? If there's enough to keep you there, we're going to get rid of it on summary judgment? Or what? That's the way you proceed. They are resting on statutes that are on the books, and there's at least a plausible suggestion. It may be nothing more than their way to try and stay in court, but it's there, and we're supposed to decide it. Well, with respect, I don't think merely the invocation of the statute avoids the application of the political question doctrine. We need to look at the type of claim that is being presented. What – But if those claims don't arise under ATS, the answer is you haven't stated a cause of action. Well – Not political question. If you haven't stated a cause of action. The Supreme Court has cautioned that ATS cases especially have grave risks of interfering with foreign policy. Yeah, which is why – And this is a specific case. Counsel, that's my whole point. Which is why the Supreme Court has narrowed ATS down to almost nothing. But that's where they want to go. So that means they've got a really hard road, big hill to climb. It's not a reason to run to the political question doctrine when they're putting themselves in a place where the cause of action is very hard to show. And then – Go ahead. I'm sorry. I was going to say, Mr. Polam, if – just to sort of I think clear – give you a clearer case maybe than this one of what might be behind some of the efforts on the courts to confine the political question doctrine to its proper place where it really does deal with conflicts between the branches or matters that are constitutionally allocated to another branch. If there were U.S. teachers working in the occupied territories and they were captured and tortured, would they have a claim under the ATS? And the fact that they are there in a very contentious place where sovereignty is under dispute and maybe who the peacekeepers are around the university where the professors are, it wouldn't prevent the court – wouldn't render that a political question, the fact that it's happening in and maybe even infused with the passions of this long-going, long-standing dispute. There would still be an ATS claim, would there not? Well, I think what's important to do here is look at the claims that the plaintiffs have raised and the types of questions that they ask the court to make in their complaint. They say that settlement expansion necessarily entails ethnic cleansing. They try and hold Mr. Abrams liable for genocide and crimes against humanity for testifying to Congress that Palestinians are the root cause of violence. They say that some of the donors have financed the Gaza invasions during which Israeli military forces murdered approximately 3,500 civilians and that the corporate defendants participated in war crimes by participating in the condemnation and demolishment of 49,000 Palestinian homes. All of these questions and the way they're presented, asking the district court to draw big-picture conclusions with respect to settlements, all invite the court to essentially pick a side in this very sensitive international foreign policy area. Not if the court stays within the framework of ATS. I mean, Matt, that's what we do. That's what we're paid to do. That's what we're appointed to do. The fact that parties make large, noisy, messy claims doesn't mean that we're unable to stay within the framework of a statute. You know, that's why I asked, what's the claim that I was curious, what are their allegations to support their claim under the Torture Victim Protection Act? Because I know what that requires. I didn't hear an answer that was helpful, and that may be the way it gets addressed in the district court. That's what we do. The fact that a party makes a lot of noisy claims along the way doesn't take us away from the statutory claim that's before us. No, but their claims are... And we don't have to decide. Counsel, we don't have to decide all of the things that parties say purportedly in support of a statutory claim which we would say are irrelevant. Certainly, I see that I have gone over my time. Well, let me ask you a question about Al-Shifa and the defendants here who are not defendants, but the actions in challenge that were taken by Israeli military. Yes. Can you address that under Al-Shifa? Yes. The plaintiffs have brought several claims that expressly touch on actions taken by the Israeli armed forces. They claim that simply... We know what they claim. How does that fit under Al-Shifa? Is that your position? Well, I think in light of the significant military and political support that the United States provides to Israel, a determination by a court that Israel is involved in longstanding patterns of genocide and crimes against humanity, specifically through its military, which, again, the United States provides support for, that calls into question and passes judgment on the wisdom of United States foreign policy with respect to Israel. And this court has said repeatedly that the courts are not a forum for reconsidering the wisdom of discretionary foreign policy choices by the United States. And so those claims do that, I think, very directly. You're clearly right that there are many statements and requests that are made in the plaintiffs' pleading that do butt up against foreign policy determinations made by the United States over the years. But it's a very broad complaint with lots and lots of factual allegations. And is it your position that if some of the allegations are that rogue settlers unaffiliated with the Israeli government were killing Palestinians, were fraudulently taking their homes, and were motivated by a genocidal desire to eliminate all the Palestinians in the area, would that be covered by the political question doctrine? I think it would to the extent that the government has determined. Well, it's a little difficult to say what if there were a different case presented, because we've looked at the complaint that the plaintiffs have filed. But the government has determined that the adjudication of this case interferes with its conduct of foreign affairs, specifically, or in one way, because the government's longstanding policy, which the Supreme Court acknowledged in Zivotofsky, is that the appropriate approach to resolution of the Palestinian-Israeli conflict is through direct negotiation between the parties involved, and that there can't be a solution imposed from an outside party on them. And determining the rights and liabilities of the Palestinian-Israeli people with respect to these lands very much constrains the scope of executive discretion to achieve that negotiated settlement. So you didn't have an answer for my question, except that you think that's not what's been alleged? Yes, and I think it could still interfere in that way if the way the complaint is drafted calls on a court to determine rights to land in this area where sovereignty is hotly disputed. And I just have one more question, which is the position of the United States. As you know, the appellants spent a lot of their brief talking about whether the United States was required to file a statement of interest or not, and the United States did file a brief. Is that the position of the United States government? Is that the State Department's position in this matter? Or is that the position of the litigating arm in the Justice Department? No, so the plaintiffs are operating under a mistaken impression. I understand that. I'm just asking you a question about the position that you're representing here. Have you consulted with the State Department? So I represent the position of the United States government, of which the State Department is a part. Exactly. There is a routine process for gathering the views of interested agencies. The normal practice was followed here. The government was a party to the litigation. In those cases, it expresses its views through its filings made by the Department of Justice. There's nothing suspect or out of the ordinary about that. Thank you. Thank you very much. Thank you. Mr. Blackman? Thank you, Your Honors. I want to pick up on some of the questions that were asked by the members of the panel. Judge Edwards, I think it has been made clear in the case law from this Court and from the Supreme Court that political question really has to be judged on a case-by- case basis. Generalities don't advance the cause, and particularly it's the case that the mere presence of what is alleged to be a statutory claim doesn't take it out of the political question realm if the attributes under Baker v. Carr are present, any one of which will create a non-justiciable political question. And this Court has said, both in Al-Shifa and in the Jaber case in which Judge Pillard was on the panel only last year, that an ATS claim doesn't immunize a case from political question analysis. Now, in this case, I think the Court needs to look at the pleading because that's what we have. And as my friend from the government said, it's not really appropriate for the pleading and say, well, hypothetically, if this were just pleaded as a wrongful death case, would that be justiciable? Because the plaintiffs quite deliberately didn't do that. And this, by the way, is the second amended complaint and didn't ask for permission to amend below. So this is their considered effort, and their considered effort is to make a pleading that is entirely wrapped up in what they call the settlement enterprise. That is a phrase that is repeated again and again. And the settlement enterprise is a policy of a close ally, Israel, and often, as they themselves, again, plead, intertwined with the activities of the IDF, the Israeli military, which gets billions of dollars a year in aid from this country for its activities. And at one point in the complaint, the plaintiffs even slip away from the settlement enterprise. It actually goes so far on page JA91 in the joint appendix where they're talking about settlement expansion activities. They say in footnote 127, commitment to the Zionist enterprise. So I think the court should be clear, and the plaintiffs are clear, this is an attack on the state of Israel and a major policy. That policy can be judged to be right or wrong. The plaintiffs have a grievance that many feel to be a legitimate one, but it's a political grievance. Counselor, I think you're missing my point, or maybe it's not to your advantage to get it. I'm old school, you know, so I hear you and I'm like, so what? My point is this. They're coming into court as plaintiffs. They've got to rest on something. They have to have a cause of action. They've got to have jurisdiction and a cause of action. They chose their cause of action. Torture Victim Protection Act, political question doctrine. All of the stuff you're talking about, as I hear you say it, is like, so what? Those are their policy concerns about what's going on in the world, and they're unhappy about some things. Maybe justly, maybe not so. I'm a very limited role here as a judge. Where's your cause of action? ATS? How do you make it out? Don't tell me why you're unhappy with the world. Tell me how you make out a cause of action under ATS. That's what we do. And all of what you've said is like, so what? They've still got to make out a cause of action under ATS, and ATS is really narrow, and they address all of what you're talking about. A judge would just say, it doesn't work. Go away. I'm dismissing on that. You have anything else, and then we go through it. That's what we do. Judge Abrams, I know that's your view. No, it's the Supreme Court's view. Well, that's fairly important. No, but I think, in all fairness, the Supreme Court has taken a very different view on two things which are related but separate. They clearly have narrowed the ATS to the vanishing point. We can agree on that, and we can probably, therefore, all agree that if this Supreme Court has also told us in Baker v. Carr and its progeny when they've addressed political question issues, and when this court has addressed political question issues, that you don't even get to whether it states a cause of action if it's non-justiciable. And here, as Judge Pillard, I think, intimated in some of her questions, it's non-justiciable because, as Judge Chutkin said below, this complaint is inextricably linked to basic policy decisions that the United States government has said, and I've heard it again today from my friend, are policy decisions. The settlements are a very delicate diplomatic issue. The United States has expressed views on them at different times. Justiciability, I mean, I hear what you're saying. Justiciability doesn't become an issue if the purported cause of action isn't anything that we can hear. If it doesn't raise anything, the fact that a party comes into court with world grievances doesn't go anywhere unless they can put it somewhere. And so the justiciability notion that you're talking about, I think when you read the cases carefully, it's only when you have a conflict with the cause of action and Congress has attempted to get into the business of the other branch and we're talking about that kind of a situation. But if a party just comes in with complaints and they're resting on a statute and we look at the statute and we look at the complaint and we say there's no cause of action here, justiciability is irrelevant. Let me give a very poignant example involving someone who went to law school a few years ahead of me. Jennifer Harbury stood in front of this court arguing in person for the murder of her husband. That clearly would have been an actionable claim, but this court held it was not justiciable. Why? Because of the political overlay of the fact that the CIA was alleged to have been involved in the torture and murder of her husband. That was terrible. In the Schneider case, the Chilean dictatorship murdered somebody. You nonetheless held it to be non-justiciable. Yeah, but remember what you started out by saying, it was an actionable claim. That's right. I get that. Wrongful death is actionable. That's right. An actionable claim. And nonetheless. That's what we're looking to see in the first instance to decide whether they're going to worry about does it involve a political question. My point was that the wrongful death of Ms. Harbury's husband would certainly, in other contexts, have been an actionable claim. Right. But you decided that you weren't going to even decide whether it was an actionable claim because it was non-justiciable. And my point, therefore, is it's not enough to have a cause of action whether denominated under the ATS or denominated under the common law or denominated under some other body of law if it is non-justiciable. And that is really important. When Congress wants to create causes of action in this sort of area, it passes statutes like the Anti-Terrorism Act, which a U.S. citizen has to fill. Did you see what we said in Harani? Pardon me? Did you see what we said in Harani in response to what you're saying? It's like, yeah, we get involved in stuff that involves the kinds of questions that you now want to put all in the political. And we've said no. We're not going to do it that way. If Congress directs you to do it in something like the ATA or in the very limited circumstances of the ATS and the claim does not have this additional political overlay, of course, you do your job. But you don't do your job. I'm over time, and I apologize. You do do your job, but sometimes your job is to say, no, we can't decide this because we're in an area now that is committed to executive discretion. We're in an area where there is no judicially discoverable standard. We're in an area, particularly here, factor three under Baker v. Carr, where there is an initial policy determination to be made in order to open the door to all the rest of it. And that initial policy determination has to do with the legality of the settlements. But the plaintiffs have disclaimed that. They've said, I mean, they say many contradictory things. I understand that. But we're also, I mean, the standard of review for us is take the pleadings in the light most favorable to the plaintiff. And so if they're saying contradictory characterizations, one of their characterizations of at least some of their claims is it doesn't matter whether the settlements are completely lawful. If they're lawful, they're saying there's still allegations of wrongful conduct. What about my hypothetical with, you know, American professor working in the West Bank tortured? Cause of action or political question? Have to look at all the facts and circumstances, as pleaded here. Right. And again, I said I don't really think it's appropriate for the court to rewrite the complaint to maybe get it over the line. Of course it's not. I agree with you. I agree with you. But I'm just trying to probe the scope of your position. Okay. Take an example. Here's a settlement. And the settler sees somebody there who thinks the settler is menacing that settlement or the settler's family. The settler may be right or wrong. The settler may be much too quick on the trigger because of ideological passions. He pulls the gun. He says it's self-defense. The family of the person who's killed says this is a violent settler out to destroy Palestinians. The court can't determine that without that initial factor three determination, making a policy decision. Is this settler here in the first place? Is he defending his property or is he wrongfully stealing someone else's property and then taking violent action against the victim of his theft? That gets you to the political question. I'm way over time and I will subside unless there are further questions from the court. Does Mr. McMahon have? Okay. I'd actually reserve three, Your Honor. Well, you used them. I'm sorry? You used them. You used the three minutes. Because I was addressing the judge's question. One of the things I didn't get to say to you folks is that there's a terrible precedent that this court has set. This court has held that a statement of interest filed by the Justice Department under the Westfall Act is the equivalent of a declaration of interest filed by the State Department. The State Department has the requisite expertise. The Justice Department doesn't. The mission of the Justice Department is to enforce criminal laws, not to issue. The statement the court made was inciting the Simon case. The court concluded, gee, in Simon, there was no declaration of interest filed. She's distinguishing my cases. Actually, there were 74 pages filed by the State Department in the Simon case discussing the foreign policy concerns. The other thing about settlements and illegality, she relies on Judge Bates' opinion, Doe versus Israel. He concluded the only reason he has to decide whether Israeli settlements are legal is because the plaintiffs have brought a RICO claim. There is no RICO claim that we have brought. I would also like to conclude that in terms of self-defense, Palestinians wake up one morning, their olive groves are in settlements. They can't go in because it's a military enclave. At 2 a.m., they try to sneak in and get some olives. They're not attacking a settlement, as the testimony will reveal. They're trying to live off the products of an olive grove. That's all. So I know this is a very difficult case, but dangerous precedent would be set if you allow that case to be enshrined as relevant case law in the political question doctrine. Now, what do I see? Affirmance that the active state doctrine doesn't apply. Number two, affirmance with respect to Abrams. We can sue him for 22 years. The eight years when he was a government employee, we can't sue him for. And I'm not sure whether the Justice Department even briefed that issue in terms of a reversal, but there are some things that this court did, and I'd like you to affirm them. Obviously, reverse the ruling on political question. Thank you.
judges: Henderson, Pillard, Edwards